**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **DUVAL LEDET, individually and for all those similarly situated** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **vs.** | ) ) | **Case No. 24 C 10974** |
| **FREIGHTBULL, INC., and STANOJCE ATANASOV,** | ) ) ) ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

　　Duval Ledet has sued defendants Freightbull, Inc. and Stanojce Atanasov, president of Freightbull, for himself and on behalf of a class of similarly situated persons. Ledet contends that, while he was employed with Freightbull between December 2022 and March 2024, both defendants violated the Illinois Wage and Payment Collection Act, and Freightbull further violated the Illinois Consumer Fraud and Protection Act, the Illinois Uniform Deceptive Trade Practices Act, Truth-in-Leasing regulations, and its employment agreement with Ledet. Freightbull and Atanasov have moved to dismiss the action.

**Background**

　　Plaintiff Duval Ledet worked as a truck driver for Freightbull, a motor carrier service, from December 2022 to March 2024. Ledet is a resident of Sumrall, Mississippi and Freightbull is an Illinois company with its corporate offices in Tinley Park, Illinois.

Stanojce Atanasov is a resident of Illinois.  Ledet alleges that Atanasov is the president, secretary, and treasurer of Freightbull.

Freightbull refers to its truck drivers as "owner operators."  Owner operators are required to sign a contract called the Owner Operator Equipment Lease Agreement (OOA) before beginning work.  It is undisputed that Ledet signed this agreement on February 16, 2023.  Defendants contend that Ledet signed an additional OOA agreement on December 13, 2022.  Atanasov signed the OOA agreement on Freightbull's behalf.

Ledet contends that Freightbull treats its owner operators as independent contractors when it should actually treat them as employees.  Am. Compl. ¶¶ 30–36, 40–45.  He further alleges that Atanasov has "ultimate control or authority over Freightbull's practices and policies of treating Owner Operators as independent contractors instead of employees" and that "he knowingly permitted Freightbull to misclassify Owner Operators as independent contractors when they were really employees."  *Id.* ¶¶ 61, 62.

In this suit, Ledet alleges that Freightbull violated various statutes by failing to properly compensate Ledet and other similarly situated plaintiffs for their services.

First, Ledet contends that Freightbull violated the Illinois Wage and Payment Collection Act (IWPCA) by taking improper deductions from Ledet's compensation for items such as truck and trailer rent, truck registration, and insurance, all of which were the benefit of Freightbull (count 1).  *Id.* ¶¶ 65–71; 820 Ill. Comp. Stat. § 115/9.  Under the IWPCA, Illinois employers may not deduct more than fifteen percent of the net amount of each wage payment.  *See* 820 Ill. Comp. Stat. § 115/9(7).  Ledet alleges that

Freightbull took more than fifteen percent without obtaining his express written consent.

Also in count 1, Ledet alleges that Freightbull violated the IWPCA because it did not reimburse him for all necessary expenditures or losses he incurred within the scope of employment and directly related to Freightbull's services, as required under 820 Ill. Comp. Stat. § 115/9.5.  *See* Am. Compl. ¶¶ 75–77.  Ledet alleges that Freightbull has not yet reimbursed him for these expenses or deductions.

Ledet also alleges in count 1 that Freightbull violated the IWPCA by not fully compensating him, including for fuel-related compensation guaranteed under the OOA, within a thirteen-day pay period as required under the statute.  820 Ill. Comp. Stat. § 115/4.  *See* Am. Compl. ¶¶ 81–84.

In count 2, Ledet alleges that because Atanasov "knowingly permitted" Freightbull to violate the IWPCA in the various ways asserted in count 1, Atanasov is also liable under the IWPCA for these violations.  *See* Am. Compl. ¶¶ 86–87, 191–93.

In count 3, Ledet alleges that Freightbull violated federal Truth-in-Leasing (TIL) regulations.  Motor carriers that transport property in equipment they do not own, like Freightbull, must create a written lease agreement that meets TIL requirements.  Am. Compl. ¶ 88; 49 C.F.R. § 376.2(e).  Ledet alleges that the OOA was a lease subject to TIL regulations but that Freightbull did not abide by the regulations' requirements.  Ledet alleges a series of violations:  Freightbull did not pay him the full compensation the OOA stated he would receive for performing transportation services, 49 C.F.R. § 376.12(d); the OOA stated that compensation would be paid monthly despite TIL regulations requiring compensation to be made within fifteen days of document submission, and Freightbull in fact paid Ledet more than fifteen days after he submitted documentation,

*id.* § 376.12(f); Freightbull did not disclose deductions that it took from Ledet's compensation, *id.* § 376.12(h); the OOA did not specify how Freightbull would compute the amount of deductions, *id.* § 376.12(h); the OOA did not specify any amount that would be charged back to a driver for insurance, *id.* § 376.12(j); Freightbull did not pay interest to drivers on any escrow funds collected from them and did not return these funds within forty-five days from the date of termination of the lease agreement, *id.* § 376.12(k)(5)–(k)(6); and finally, it did not provide accountings of all transactions involving Ledet's accounts, *id.* § 376.12(k)(3).

In counts 4 and 5, Ledet contends that Freightbull violated the Illinois Consumer Fraud and Protection Act (ICFA) and the Illinois Uniform Deceptive Trade and Practices Act (UDTPA) "because it engaged in conduct that created a likelihood of confusion and/or misunderstanding and used and employed unfair and deceptive acts and practices to recruit Owner Operators." Am. Compl. ¶ 132. Ledet points to a series of Freightbull's recruiting advertisements that he alleges misrepresent the salary that owner operators earn and the method through which they are paid. *Id.* ¶ 133. In engaging in such allegedly false advertising, Ledet alleges, Freightbull creates a likelihood of confusion and/or misunderstanding and employs unfair and deceptive acts and practices in recruiting and paying owner operators.

In count 6, Ledet contends that Freightbull breached the OOA because it has not paid owner operators full compensation in the agreed-upon timeframe.

### Discussion

In their partial motion to dismiss, defendants assert four grounds for dismissal. First, they argue that the Court should dismiss or strike Ledet's class allegations as to

Freightbull because the OOA includes a class action waiver provision. Second, they argue that the class action waiver also applies to Ledet's claim against Atanasov. Third, defendants argue that the Court should dismiss Ledet's IWPCA claim against Atanasov (count 2) because he alleges insufficient facts showing that Atanasov qualifies as an employer under the IWPCA. Fourth, they argue that the Court should dismiss Ledet's ICFA and UDTPA claims (counts 4 and 5) because he has failed to plausibly state a claim under either statute.

To survive a motion to dismiss for failure to state a claim, "the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the pleading stage, the Court must "accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Id.*

A.  **Class action waiver as it applies to Freightbull**

The OOA that Ledet signed included a class and collective action waiver provision that reads as follows:

> WAIVER. Owner Operator and Owner Operator's workers waive any right to initiate, join (i.e. opt in to), remain in (i.e. opt out of), or otherwise participate in any class action, collective action, consolidated action, or representative action brought against Carrier, including, but not limited to, such actions brought under state or federal law and those arising under the Fair Labor Standards Act.

Exs. A, B, § 25(b). Freightbull contends that Ledet signed an OOA with Freightbull two times– one dated on December 13, 2022 and one on February 16, 2024. Def.'s Exs. A, B. Ledet alleges that he signed an OOA on February 16, 2024. Pl.'s Ex. 1.

Because the OOA included a class waiver provision, Freightbull argues that the

Court should strike Ledet's class allegations and preclude him from maintaining a class action.  In response, Ledet's main contention is that because Freightbull breached the OOA, it should be prevented from now trying to benefit from the terms of the agreement.

There are a number of cases in which courts have enforced similar dispute resolution provisions despite a party's contractual breach.  Ledet argues that these cases are inapposite because a class action waiver is not a dispute resolution provision.  But he offers no legal basis for this contention.  The Court agrees with Freightbull that a class action waiver is a dispute resolution provision—it regulates the method in which litigation will occur and does not impact substantive rights.  *See Bailey v. Vulcan Materials Co.*, No. 1:21-CV-0998-MHC, 2021 WL 5860743, at *3 (N.D. Ga. Nov. 16, 2021) ("Class action waivers have been called 'litigation devices,' more closely aligned with venue than with any substantive right.").

Ledet cites *Horne v. Electric Eel Manufacturing Co., Inc.*, 967 F.3d 704 (7th Cir. 2021), for the proposition that the Seventh Circuit has found that in certain cases courts may find contract provisions unenforceable in the event of a party's breach.  *Id.* at 718.  *Horne*, however, involved an exculpatory provision, not a dispute resolution provision, two fundamentally different types of contractual terms.  The former involves substantive rights; the latter involves procedural rights.  *Stephan v. Goldinger*, 325 F.3d 874, 877 (7th Cir. 2003) ("Contractual provisions that exculpate a party from statutory liability are sometimes refused enforcement . . . notably when they have adverse effects on third parties. . . .  But the contractual provision challenged in this case is not exculpatory.")

This case is more analogous to *Stephan v. Goldinger*, No. 99 C 525, 2000 WL 36740247 (N.D. Ill. Aug. 29, 2000), in which the court concluded that finding a

6

contractual statute of limitations provision unenforceable due to the defendant's breach of another term of the contract would render such clauses "largely meaningless." *Id.* at *5, *aff'd*, 325 F.3d 874 (7th Cir. 2003) ("Obviously, such causes of action often will involve allegations that one or both parties have breached the agreement. If courts lifted the operation of a limitations clause once a party alleged that the underlying contract was breached, the clause would be restricted from operating in the very circumstances for which it was designed.").

Indeed, courts have routinely found class action waivers enforceable in situations where a contractual breach is alleged. Though these cases have primarily arisen in the arbitration context, they are nonetheless persuasive here because both arbitration requirements and class action waivers impact a contracting party's procedural rights. *See e.g.*, *Niiranen v. Carrier One, Inc.*, No. 20 C 6781, 2022 WL 103722, at *6-7 (N.D. Ill. Jan. 11, 2022) (finding that class action waiver was enforceable against truck drivers bringing collective claims under the IWPCA, Truth-in-Leasing regulations and breach of contract); *Hanus v. Harting, Inc. of N. Am.*, No. 21 C 5289, 2024 WL 4894283, at *3 (N.D. Ill. Nov. 26, 2024).

For these reasons, the Court grants Freightbull's motion to strike the class allegations as they pertain to Ledet's claims against Freightbull.

**B.     Class action waiver as it applies to Atanasov**

Defendants ask the Court to extend the OOA's class action waiver to preclude Ledet from maintaining a class claim against Atanasov even though he is not a party to the OOA. They argue that courts have found that agents of employers and "closely related" third-party beneficiaries may take advantage of dispute resolution provisions in

an employer's contracts. In support of this argument, Freightbull cites *Dunmire v. Schneider*, 481 F.3d 465 (7th Cir. 2007). In *Dunmire*, the Seventh Circuit concluded that supervisory brokers at Morgan Stanley could benefit from an arbitration provision, despite not being parties to the employer's contract with the plaintiff. The court justified this based on the proposition that "Morgan Stanley's obligations to Dunmire depend on what its agents did (or omitted) when dealing with his account. It would make little sense for a customer to arbitrate Morgan Stanley's liability while simultaneously litigating with the employees—if there were anything to litigate with the employees *about*." *Id.* at 467. The court further noted that the defendants likely were not even directly liable to the plaintiff: "[the defendants] dealt with Dunmire on behalf of a disclosed principal; as long as they acted within the scope of that agency, they would not be personally liable under the law of most states whether or not their errors or omissions caused Morgan Stanley to injure a customer." *Id.*; *see also Mathys v. Hartford Gold Grp., LLC,* No. 20 C 3927, 2020 WL 7183744, at *3 (N.D. Ill. Dec. 7, 2020).

The difference in this case is that neither party has cited any legal proposition that would absolve Atanasov from personal liability for his actions related to Freightbull. Indeed, the contrary is true: the IWPCA expressly makes individuals directly liable in appropriate circumstances. *See infra* at 9–11. Thus Atanasov's relationship with Freightbull appears to be distinguishable from the relationship in *Dunmire.*

To be sure, Freightbull also cites cases that have found that third-party beneficiaries may benefit from forum-selection clauses. *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984) ("[T]he cases hold that a range of transaction participants,

8

parties and non-parties, should benefit from and be subject to forum selection clauses."). What is less clear is whether Atanasov is appropriately considered a third-party beneficiary of the OOA. The Court concludes that it is not necessary to address at this stage of the litigation whether Atanasov is entitled to benefit from the class action waiver. The point is better addressed in the context of proceedings related to class certification if the case reaches that stage. The Court denies the motion to strike without prejudice with respect to Atanosov and count 2.

**C.    IWPCA claim against Atanasov**

Defendants next argue that the Court should dismiss Ledet's IWPCA claim against Atanasov (count 2). They contend that Atanasov is not an employer under the IWPCA and thus cannot be subject to individual liability.

The IWPCA defines an "employer" as follows:

> As used in this Act, the term "employer" shall include any individual, partnership, association, corporation, limited liability company, business trust, employment and labor placement agencies where wage payments are made directly or indirectly by the agency or business for work undertaken by employees under hire to a third party pursuant to a contract between the business or agency with the third party, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed.
>
> . . .
>
> In addition to an individual who is deemed to be an employer pursuant to Section 2 of this Act, any officers of a corporation or agents of an employer who knowingly permit such employer to violate the provisions of this Act shall be deemed to be the employers of the employees of the corporation.

815 Ill. Comp. Stat. § 115/2, 13.

Ledet alleges that Atanasov is the president, secretary, and treasurer of Freightbull and that in this capacity, he has "ultimate control or authority over the terms

and conditions of Freightbull's relationships with Owner Operators"; "ultimate control or authority over the terms and conditions in the OOA"; "ultimate control or authority over Freightbull's practices and policies of treating Owner Operators as independent contractors instead of employees"; and that he "knowingly permitted Freightbull to misclassify Owner Operators as independent contractors when they were really employees."  Am. Compl. ¶¶ 59–62.

Given the statutory definition, Ledet has plausibly alleged that Ledet is an employer under the IWPCA.  Freightbull argues that Ledet's allegations are indistinguishable from those in *Dixon v. Washington & Jane Smith Community-Beverly*, No. 17 C 8033, 2018 WL 2445292, at *14 (N.D. Ill. May 31, 2018) (Kennelly, J.).  In *Dixon*, this Court concluded that the plaintiff had not asserted sufficient factual allegations to plausibly allege that the individual defendants qualified as employers under the IWPCA or that they had had a role in committing the IWPCA violations in question.  *Id.*  Freightbull further argues that Ledet has not alleged that Atanasov "knowingly" caused Ledet to lose his wages, as required under one of the provided definitions of an "employer" under the IWPCA.  *See* 815 Ill. Comp. Stat. § 115/13; *see also Andrews v. Kowa Printing Corp.*, 217 Ill. 2d 101, 107, 838 N.E.2d 894, 898 (2005).

Neither of these contentions accurately describes Ledet's allegations in the complaint.  Ledet does not merely make conclusory allegations about Atanasov like the plaintiffs in *Dixon*.  Rather, he alleges that Atanasov had ultimate control and authority over the OOA's terms and Freightbull's policies regarding owner operators and that he "*knowingly* permitted Freightbull to misclassify Owner Operators as independent contractors when they were really employees."  Am. Compl. ¶¶ 59–62 (emphasis

10

added).  Given these allegations, Ledet has plausibly alleged that Atanasov is an employer and can be held liable under the IWPCA.  The Court therefore declines to dismiss count 2.

### D.    ICFA claim against Freightbull

In his response to Freightbull's motion to dismiss Ledet's ICFA claim (count 4), Ledet contends that he is asserting an ICFA claim based on Freightbull's violation of section two of the UDTPA, particularly, based on Freightbull creating a "likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services."  815 Ill. Comp. Stat. § 510/2(a)(12)   Section two of the ICFA states that "the use or employment of any practice described in section 2 of the 'Uniform Deceptive Trade Practices Act'" constitutes an unfair method of competition and an unfair or deceptive act or practice under the ICFA.  815 Ill. Comp. Stat. § 505/2. In this sense, Ledet is correct that a plaintiff may assert a claim for damages via the ICFA that is premised on a violation of the UDTPA.  *See Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 943 (N.D. Ill. 2023) (Kennelly, J.).  This, however, does not address Freightbull's accurate observation that Ledet has not alleged facts sufficient to support a plausible contention that he was a consumer when he engaged with Freightbull or alternatively, that his interaction with Freightbull satisfies the consumer nexus test—a requirement to bring an ICFA claim.  *See Hess v. Kanoski & Assocs.*, 668 F.3d 446, 454 (7th Cir. 2012).

Ledet attempts to skirt this requirement by arguing that he need not meet this test when bringing an ICFA claim premised upon a UDTPA violation.  But he offers no persuasive legal authority supporting this proposition.  The case he cites, *Piquion v.*

*Amerifreight Sys, LLC*, No. 22 C 5690, 2023 WL 8113379 (N.D. Ill. Nov. 2023), only confirms that plaintiffs who are not consumers must meet the consumer-nexus test to successfully prevail in alleging an ICFA claim. *Id.* at *15–16.

In a case with almost the same facts as the present case, this Court concluded that truck drivers could not maintain an ICFA claim because they were not consumers and had not established a basis to satisfy the consumer nexus test. *Rivers v. Southway Carriers, Inc.*, No. 23 C 738, 2023 WL 5348809, at *3 (N.D. Ill. Aug. 20, 2023) (Kennelly, J.) ("[A] person harmed in his capacity as a supplier of labor, which is what is alleged here, is not a 'consumer' under the statute. *See, e.g., Hess*, 668 F.3d at 454 ("Hess has no claim under the Illinois Consumer Fraud Act, Count II, because Hess was an employee, not a 'consumer.'"). To be sure, non-consumers and non-business plaintiffs may maintain claims under the ICFA, but to do so, they must meet the consumer nexus test. *See Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 1005–06 (N.D. Ill. 2017) ("[C]ourts have also allowed non-consumers—both business and nonbusiness plaintiffs alike—to go forward with ICFA claims where they satisfy the 'consumer nexus' test.").

Ledet has not even attempted to address the application of the consumer nexus test. Perhaps for good reason: it is quite unlikely that he can plausibly allege that he and Freightbull were in a consumer-like relationship. *Id.* ("To satisfy [the consumer nexus] test, a plaintiff must show (1) that their actions were akin to a consumer's actions to establish a link between them and consumers; (2) how defendant's representations ... concerned consumers other than [plaintiff]; (3) how defendant's particular [activity] involved consumer protection concerns; and (4) how the requested relief would serve the interests of consumers.") (internal quotation marks omitted).

For this reason, the Court grants Freightbull's motion to dismiss Ledet's ICFA claim.

**C.      UDTPA claim against Freightbull**

Freightbull argues that Ledet lacks standing to maintain a UDTPA claim based on his contention that Freightbull failed to properly and timely compensate him.  The UDTPA provides a cause of action for injunctive relief only; it does not provide a cause of action to recover damages.  *See Kljajich v. Whirlpool Corp.*, No. 15 C 5980, 2015 WL 12838163, at *5 (N.D. Ill. Sept. 25, 2015) ("The IDTPA does not support a claim of actual or punitive damages, however, as the 'only remedy under the [IDTPA] is injunctive relief.'").  Freightbull correctly points out that to prevail on a UDTPA claim, then, Ledet must plead a likelihood of being injured by Freightbull's conduct in the future.  *See Kahn v. Walmart Inc.*,107 F.4th 585, 606 (7th Cir. 2024); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) ("The equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a 'likelihood of substantial and immediate irreparable injury.'").

Ledet does not respond to this argument.  It is undisputed that he no longer works at Freightbull.  He is thus unable to plausibly allege that he would again be harmed by the Freightbull practices of which he complains.  The Court therefore dismisses Ledet's UDTPA claim.

## Conclusion

For the reasons stated above, the Court grants defendants' motion to dismiss [dkt. 23] in part and denies it in part.  Ledet's class allegations against Freightbull are

stricken from count 1 of the amended complaint, and counts 4 and 5 are dismissed. The Court defers to a later date the question of whether the class allegations against Atanasov should be stricken from count 2. The Court otherwise denies the motion to dismiss. Defendants are directed to answer any of the remaining claims that they have not already answered by June 17, 2025. The parties are directed to confer regarding discovery and pretrial schedule and are to file a joint status report with a proposed schedule by June 2, 2025. The case remains set for a telephonic status hearing on June 5, 2025 as previously ordered.

Date:  May 27, 2025

_____
MATTHEW F. KENNELLY
United States District Judge

14